THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
BONNIE L. HOBBS (California Bar No. 208525)
Assistant United States Attorney
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-4447
    Facsimile:  (213) 894-6436
    Email:     bonnie.hobbs@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | No. CR 09-31-R |
| | ) | CR 09-32-R |
| Plaintiff, | ) | |
| | ) | FINDINGS AND ORDER DENYING |
| v. | ) | DEFENDANT'S MOTION TO SUPPRESS |
| | ) | EVIDENCE |
| MICHAEL MING ZHANG, | ) | |
| aka "John Zhang," | ) | Motion Hearing Date: 5/11/09 |
| aka "John Wen," | ) | Motion Hearing Time: 1:30 pm |
| | ) | Location: Courtroom of the |
| Defendant. | ) | Honorable Manuel L. Real |
| | ) | |
| | ) | |

Defendant Michael Ming Zhang's Motion to Suppress Evidence

came on for hearing on May 11, 2009.  The Court has reviewed the

materials submitted by the parties, including, but not limited

to, the following: 1) Defendant's Motion to Suppress Evidence

filed on April 20, 2009, and the Declaration of Thomas Kielty,

together with the exhibit thereto, filed concurrently therewith;

2) the Government's Opposition to Defendant's Motion to Suppress

Evidence filed on April 27, 2009, and the Declarations of Bonnie

L. Hobbs and Special Agent Nathan N. Surface, together with

exhibits, filed concurrently therewith; and 3) Defendant's Reply

to Government's Opposition to Suppress Evidence filed on May 8, 2009.  The Court also has considered the testimony of defendant and the argument of both parties at the hearing on May 11, 2009.  Having considered all of these items, the Court hereby makes the following findings and DENIES defendant's motion for the reasons set forth below.

**II.**

**FINDINGS OF FACT**

Having considered the Declaration of Thomas Kielty proffered by defendant and exhibit thereto; the Declarations of Bonnie L. Hobbs and Special Agent Nathan N. Surface proffered by the government and exhibits thereto; and the testimony of defendant at the hearing on May 11, 2009, the Court hereby FINDS the following facts:

1.   On May 7,2008, at approximately 5:30 p.m., the Federal Bureau of Investigation ("FBI") obtained a search warrant for the premises located at 12225 Richfield Drive, Rancho Cucamonga, California 91739 (the "Subject Premises").  The warrant was issued by United States Magistrate Judge Paul L. Abrams at 5:30 p.m.  The warrant commanded Special Agents of the FBI or any other authorized agents to search the Subject Premises on or before ten days after the issuance of the warrant, during the "daytime-6:00 A.M. to 10:00 P.M."  Federal agents applied for the warrant after a state search warrant had been served on the Subject Premises earlier the same day.

2.   The federal warrant sought evidence of violations of United States export laws and laws relating to smuggling and trafficking in counterfeit goods.  Specifically, the federal

2

warrant listed as items to be seized, among other things, counterfeit electronic components and authentic electronic components that may have been used as samples for the manufacture of counterfeit components, as well as labels and packaging for counterfeit components.  The state search warrant also sought counterfeit items, primarily "Sony" products.

3.    The Subject Premises was the residence of defendant, from which defendant also ran his business, J.J. Electronics, and consisted of a house and two attached garages.  The team searching the Subject Premises consisted of approximately ten Special Agents of the FBI, and also included agents from other federal agencies, including the Defense Criminal Investigative Service, the U.S. Postal Inspection Service, the Department of Commerce, and Immigration and Customs Enforcement.

4.    The agents who obtained the warrant drove the warrant from downtown Los Angeles to the Subject Premises in Rancho Cucamonga.  They arrived in Rancho Cucamonga with the warrant at approximately 7:00 p.m.  After they arrived with the warrant, all of the agents on the search team read the warrant and prepared to execute it.

5.    At approximately 8:50 p.m., the search team assembled outside the Subject Premises.  At approximately 9:25, the searching agents entered the residence, presented the search warrant to defendant, who read the search warrant, and began the search.

6.    Defendant, his wife, and their young twin sons were present during the search.  At defendant's request, agents searched the children's bedroom and the surrounding rooms first,

and the children were permitted to remain in their room throughout the course of the search.  The children were asleep in their beds by 11:00 p.m.  As needed throughout the entire search, Mrs. Zhang was permitted to attend to her personal needs while accompanied by an agent.  Mr. Zhang remained seated on a couch in the living room during most of the search, and was also permitted to attend to his personal needs while accompanied by an agent.

        7.    The Subject Premises included an office, a single garage containing inventory of electronic components, and a room containing packaging materials and additional electronic components, among other rooms.  The garage contained shelves along all four walls that contained thousands of electronic components.  The packaging room contained additional components and a large quantity of packaging materials for the components. The office contained computers and file cabinets full of business documents.

        8.    The majority of the agents' time during the search was spent in the garage or in efforts to organize and package components taken out of the garage.  First, searching agents sorted through the components to determine whether they were within the scope of the warrant, and photographed the evidence. Then the agents attempted to organize the components, which numbered in the thousands, and determined how best to package the components for transportation to an evidence facility.  Due to the vast amount of components, agents had to obtain additional boxes and other packaging material in which to transport the components.  The quantity of components exceeded the capacity of the vehicles the agents had driven to the premises, so the agents

4

located additional transportation for the evidence.  The agents
began transporting evidence off of the Subject Premises once it
was packaged and logged.  While the initial transportation of
evidence took place, the search within the Subject Premises
continued.  Two vans and a truck made several trips back and
forth from the Subject Premises, so that the agents could leave
the Subject Premises as soon as possible.

9.  Agents recovered approximately one hundred boxes of
microchips from the Subject Premises, containing thousands of
electronic components.

10.  Agents concluded the search at approximately 4:00
a.m., immediately after all of the evidence, including all of the
electronic components, had been transported from the Subject
Premises.

**III.**

**CONCLUSIONS OF LAW**

**A.   A Search that Commences Before 10:00 p.m. and Continues
     After 10:00 p.m. Does Not Violate Rule 41**

The Fourth Amendment prohibits "unreasonable searches and
seizures."  While nighttime searches of private homes raise
special concerns relating to invasion of privacy, see Jones v.
United States, 357 U.S. 493, 498-99 (1958) (observing that "it is
difficult to imagine a more severe invasion of privacy than the
nighttime intrusion into a private home that occurred in this
instance"), nighttime searches are not per se unreasonable.
United States v. McCarty, 475 F.3d 39, 43 (1st Cir. 2007).
Courts apply a traditional reasonableness test to the search, in
which the court assesses the totality of the circumstances,
including "the scope of the particular intrusion, the manner in

which it is conducted, the justification for initiating it, and the place in which it is conducted." Id. (quoting United States v. Cofield, 391 F.3d 334, 336 (1st Cir. 2004)).  A search that begins during the daytime, but continues through the nighttime, is not necessarily unreasonable.   Id. at 44 (citing United States v. Young, 877 F.2d 1099, 1105 (1st Cir. 1989)).

Federal Rules of Criminal Procedure Rule 41 provides that a warrant to search for and seize property issued thereunder must command the officer to execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time. Fed. R. Crim. P. 41(e)(2)(A)(ii). "Daytime" is defined as the hours between 6:00 a.m. and 10:00 p.m.  Fed. R. Crim. P. 41(a)(2)(B).  Courts have held that a search that begins in the "daytime" pursuant to Rule 41, that is, before 10:00 p.m., and continues through the nighttime, is not unreasonable, and in such circumstances have refused to suppress evidence seized after 10:00 p.m.  See McCarty, 475 F.3d at 44 (holding that search that continued until 10:35 p.m. was not unreasonable and concluding that district court was correct to have denied defendant's motion to suppress evidence collected from his apartment); United States v. Squillacote, 221 F.3d 542, 556 (4th Cir. 2000) (stating that because search was commenced in daytime, federal agents reasonably could have believed that it was proper to continue search into night); United States v. Dickerson, 195 F.3d 1183, 1187 (10th Cir. 1999) (finding that search where police arrived at 9:47 p.m. and secured defendant and other individuals outside the house in less than a minute was reasonable); Young, 877 F.2d at 1105 (stating that court was aware of no legal reason why

search could not continue at night or of anything in Rule 41 or
Constitution that forbids continuing search at night, at least
when doing so is reasonable); United States v. Schoenheit, 856
F.2d 74, 77 (8th Cir. 1988) (holding that when forty-five minute
delay due to detective wandering too close to house prevented
warrant from being executed before 10:00 p.m., suppression of
evidence was not warranted where defendant was not awakened in
the middle of the night while in bed and answered door of own
volition); United States v. Burgard, 551 F.2d 190, 193 (8th Cir.
1977) (holding that searches which began during daytime and
continued into night have been held not to violate Rule 41 and
seeing no merit in suppressing fruits of search simply because
search was still in progress at 10:00 p.m. and was not completed
before 11:00 p.m.); United States v. Woodring, 444 F.2d 749, 751
(9th Cir. 1971) (holding that requirement of daylight service of
warrant, which did not arrive at premises until hour and a half
after sunset, was sufficiently satisfied by fact that officers
initiated search during daylight and left copy of warrant on
premises during course of search, and citing United States v.
Joseph, 278 F.2d 504 (3d Cir. 1960)); Joseph, 278 F.2d at 505
(holding that conduct of searching officers was within
authorization of warrant where actual searching began at 4:00 in
afternoon and was not completed until after 10:00 at night).

     The cases cited by defendant in his Motion can be
distinguished from this case.  In United States v. Raidl, 250 F.
Supp. 278 (N.D. Ohio 1965), the warrant at issue, in contrast to
the warrant to search the Subject Premises in this case, was a
nighttime warrant.  The district court in Raidl found that there

1  was no basis in law for a nighttime warrant, and the fact that

2  the warrant was executed before nightfall did not render valid an

3  otherwise invalid warrant.  In <u>United States v. Boyance</u>, 398 F.2d

4  896 (3d Cir. 1968), the judge issued a daytime search warrant at

5  1:00 a.m., and officers made entry at 2:30 a.m., in violation of

6  the clear terms of the warrant.  Finally, in <u>United States v.</u>

7  <u>Merritt</u>, 293 F.2d 742 (3d Cir. 1961), the court found that a

8  daytime search warrant for narcotics had not been executed until

9  nighttime, and that the nighttime execution was not justified by

10  the fact that the United States Commissioner who issued the

11  warrant was empowered under the Narcotic Control Act to provide

12  for service at any time of the day or night, when he had not done

13  so in that case.

14        In this case, the warrant was served prior to 10:00 p.m.,

15  which falls within the definition of "daytime" as found in Rule

16  41(a)(2).  The fact that the search continued beyond 10:00 p.m.

17  does not invalidate the search.  The search did not violate the

18  Fourth Amendment.

19  **B.    The Search of the Subject Premises After 10:00 p.m. was a**

20  **Reasonable Continuation of the Search Before 10:00 p.m., and Did Not Violate the Fourth Amendment**

21        Courts have applied the traditional reasonableness test to

22  daytime searches begun prior to 10:00 p.m. and continuing past

23  10:00 p.m., in which the court assesses the totality of the

24  circumstances, including "the scope of the particular intrusion,

25  the manner in which it is conducted, the justification for

26  initiating it, and the place in which it is conducted."  <u>McCarty</u>,

27  475 F.3d at 43 (quoting <u>Cofield</u>, 391 F.3d at 336).  The

28  reasonableness inquiry for such searches can also be framed as an

1   inquiry as to whether the search after 10:00 p.m. is a reasonable
2   continuation of the search begun prior to that time.  <u>Joseph</u>, 278
3   F.2d at 505 (holding that evidence did not show that search made
4   after nightfall was more than reasonable continuation of search
5   which began in afternoon).  Some of the factors courts have
6   considered in conducting a reasonableness inquiry for such
7   searches include whether the defendant was awakened in the middle
8   of the night while in bed and answered the door of his own
9   volition, <u>Schoenheit</u>, 856 F.2d at 77 and <u>McCarty</u>, 475 F.2d at 44;
10  the amount of contraband found, the difficulties of finding it,
11  and evidence of special inconvenience to residents, <u>Young</u>, 877
12  F.2d at 1105; the degree of freedom allowed the defendant during
13  the search and whether the search was conducted in a professional
14  manner, <u>McCarty</u>, 475 F.2d at 44; and the degree of intrusion and
15  interference with the property, <u>United States v. Gagnon</u>, 635 F.2d
16  766, 769 (10th Cir. 1981).

17       An analysis of the totality of the circumstances surrounding
18  the search of the Subject Premises in this case indicates that it
19  was not unreasonable for the search to continue until 4:00 a.m.
20  Defendant and his family were not roused out of bed for the
21  execution of the warrant.  Defendant, his wife, and his children
22  were allowed to move about the house during the search.  The
23  quantity of physical evidence found during the search required
24  significant time to catalog and collect.  Defendant has not
25  alleged that any special inconveniences arose because of the
26  search.

27
28

**III.**

**ORDER**

Based upon the findings and conclusions set forth above, defendant's motion to suppress evidence is DENIED.

IT IS SO ORDERED.

DATED: June 8, 2009       _____

HONORABLE MANUEL L. REAL
UNITED STATES DISTRICT JUDGE